# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**DOROTHY B. BACH,**

                    **Plaintiff,**

-vs-                                                            **Case No. 3-:01-CV-191**

**FIRST UNION NATIONAL BANK, et al.,**

                                                               **Judge Thomas M. Rose**
                    **Defendants.**

_____

## ENTRY AND ORDER OVERRULING DEFENDANT'S AMENDED MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION FOR REMITTITUR AND/OR MOTION FOR A NEW TRIAL (Doc. #52)

_____

This case went to trial on December 8, 2003. Defendant Dorothy B. Bach ("Bach") presented claims of: (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681s-2(b); (2) negligence; (3) intentional infliction of emotional distress; (4) defamation; (5) invasion of privacy; and (6) violation of 15 U.S.C. §1666(a) concerning billing practices.

Following Bach's presentation of her case, the Court granted First Union judgment as a matter of law with respect to all of Bach's claims except her FCRA claim. (Trial Transcript (hereinafter "Tr.") 440.) Thus, the only claim presented to the jury was Bach's claim that First Union violated the FCRA. The jury found that First Union wilfully violated the FCRA and awarded Bach $400,000 in compensatory damages and $2,628,600 in punitive damages.

Now before the Court are First Union's amended motion for judgment as a matter of law brought pursuant to Fed.R.Civ.P. 50(b) and amended motion for a new trial or amendment of judgment brought pursuant to Fed.R.Civ.P. 59(a). (Doc. #52.) These motions are now fully

briefed and ripe for decision. First Union's Rule 50(b) motion will first be addressed followed by the Rule 59(a) motion.

## RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

First Union seeks judgment as a matter of law and a new trial on the basis that Bach presented insufficient evidence to support a finding that First Union wilfully violated the FCRA and to support a finding that she suffered any injury as a result of the FCRA violation. Bach first argues that First Union waived its right to seek a post-verdict judgment as a matter of law and then argues that she presented evidence that First Union wilfully violated the FCRA and she was damaged thereby. The standard of review will first be set forth followed by an analysis of First Union's motion for judgment as a matter of law.

### Standard of Review

Rule 50(a) provides that a motion for judgment as a matter of law may be granted if, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue. *Francis v. Clark Equipment Co.*, 993 F.2d 545, 554 (6th Cir. 1993). The motion for judgment as a matter of law must "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." *Id*. Further, evidence is sufficient to preclude granting a motion for judgment as a matter of law when, in reviewing the evidence in the light most favorable to the nonmoving party, a reasonable jury could find for the nonmoving party. *Fite v. First Tennessee Production Credit Association*, 861 F.2d 884, 889 (6th Cir. 1988).

Rule 50(b) provides that a party may move post trial for judgment as a matter of law provided the party moved for a judgment as a matter of law after the close of evidence. *Libbey-*

*Owens-Ford Co. v. Insurance Company of North America*, 9 F.3d 422, 426 (6th Cir. 1993).

However, a party who failed to move for a judgment as a matter of law cannot request the district

court to rule on the sufficiency of the evidence supporting a verdict against him. *Id.* In addition,

post-verdict judgment as a matter of law is appropriate only when there is a complete absence of

fact to support the verdict so that no reasonable jury could have found for the nonmoving party.

*K&T Enterprises, Inc. v. Zurich Insurance Co.*, 97 F.3d 171, 175-76 (6th Cir. 1996).

Rule 50(c) provides that, if the renewed motion for judgment as a matter of law is

granted, the court may also grant a new trial. Further, if the motion is granted, the court must

specify the grounds for granting or denying the motion for a new trial. Fed.R.Civ.P. Rule 50(c).

<u>Analysis of 50(b) Motion</u>

In its post-trial motion for judgment as a matter of law, First Union argues that Bach

failed to produce evidence sufficient to prove that it wilfully violated the FCRA and evidence

sufficient to prove that Bach suffered any injury as a result of an FCRA violation. Bach responds

that First Union has waived its right to seek a post-verdict judgement on either of these issues

and that she presented evidence sufficient to prove that First Union wilfully violated the FCRA

and sufficient to prove that she suffered actual damages as a result of the violation. The right to

seek a post-verdict judgment will first be addressed followed by the sufficiency of the evidence.

A. Right To Seek Post-Verdict Judgment

Bach argues that First Union made no motion alleging a lack of evidence that it

committed a wilful violation of the FCRA and the sole focus of First Union's pre-verdict motion

was that Bach had no damages resulting from the violation. However, First Union's Attorney, at

the outset of his motion for judgment as a matter of law made at the conclusion of Bach's case,

stated, "With regard to the burden of proof and elements of that must be established, Mrs. Bach has not met the burden in 15 U.S.C. Section 1681 (H)(E) that she prove, in the words of the Statute, I'm quoting malice or wilful intent to injure close quote." (Trial Transcript ("Tr.") 400-01.) He later said that, "the second branch of that Mrs. Bach must establish is that First Union conduct – First Union conduct was "wilful" in terms of the statute." (Tr. 402.) These statements by First Union's Attorney are enough to satisfy the requirement that the moving party set forth the judgment sought and the law and the facts upon which First Union is arguably entitled to judgment.

Bach next argues that judgment as a matter of law cannot be had by a party who fails to renew its motion, pursuant to Rule 50(b), at the close of all the evidence (Fed.R.Civ.P. 50(b)) and the effect of failing to renew a Rule 50(a) motion is to limit relief to a new trial. *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1255 (10th Cir. 1999). First Union responds that the Sixth Circuit has adopted a flexible approach in which technical noncompliance with Rule 50(b)'s requirements will not preclude consideration of a post-verdict motion for judgment as a matter of law so long as the purposes of the rule have been served.

Generally, a party seeking Rule 50 judgment must move for judgment as a matter of law at the close of all the evidence or renew such motion if made prior to the close of all the evidence. *Riverview Investments, Inc. v. Ottawa Community Improvement Corp.*, 899 F.2d 474, 477 (6th Cir. 1990), *cert. denied*, 498 U.S. 855 (1990). However, pursuant to the Sixth Circuit's flexible approach, a Rule 50 motion may be granted despite the movant's failure to renew the motion where: (1) the court indicated that the renewal of the motion would not be necessary to

preserve the party's rights; and (2) the evidence following the party's unrenewed motion was "brief and inconsequential." *Id.*

In this case, First Union made its Rule 50(a) motion after Bach presented all of her witnesses. (Tr. 400.) Bach then rested her case without presenting any further evidence. (Tr. 427.) First Union then called Mr. Durand as a witness. (Tr. 427.) Mr. Durand authenticated Bach's account records at First Union. (Tr. 428-29.)

Following Mr. Durand's testimony, the Court requested and received additional argument on the alleged FCRA violation. (Tr. 432.) The Court then ruled on First Union's Motion for a Directed Verdict. (Tr. 439.)

Next, First Union called Mrs. Bach as a witness (Tr. 441). Mrs. Bach was questioned about her relationship with her granddaughter, about a cancelled check she wrote to her granddaughter, about a conversation that she had with a First Union representative regarding her granddaughter and about whether she authorized First Union to prosecute her granddaughter. (Tr. 441-50.)

After Mrs. Bach's testimony, First Union rested its case. (Tr. 450.) The record indicates that there was no further Motion by First Union for a directed verdict.

First Union did not renew its Rule 50 motion after the close of all the evidence. In addition, there is no evidence that the Court indicated that First Union did not need to renew in order to preserve its rights.

First Union argues that it should be permitted to make its post-verdict motion because the evidence presented after its motion was initially made was brief and inconsequential. Yet, the evidence presented after First Union made its Rule 50 motion was not brief and inconsequential.

It consisted of two witnesses, included substantial testimony and was First Union's entire case, notwithstanding its cross-examination of these and other witnesses during Bach's case in chief.

In sum, First Union did not renew its Rule 50 motion after the close of <u>all</u> the evidence and First Union is not entitled to the flexible approach to interpretation of this rule established in the Sixth Circuit. Therefore, First Union has waived its right to seek a post-verdict judgment as a matter of law. However, the Court will proceed to consider the merits of First Union's motion for judgment as a matter of law.

### B. Sufficiency of Evidence Regarding Wilful FCRA Violation

Initially, First Union argues that Bach did not present evidence sufficient to support a finding that it wilfully violated the FCRA. However, she did.

Under the FCRA, First Union has a duty, after receiving notice from a consumer reporting agency of a dispute regarding the completeness or accuracy of an account, to (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency; and (4) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the information was initially furnished. 15 U.S.C. §1681s-2(b)(1)(A)-(D). Further, non compliance with this part of the FCRA has been found to be the basis for a finding of a wilful violation. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226-27 (3rd Cir. 1997). To show wilful noncompliance with the FCRA, Bach must show that First Union knowingly and intentionally committed an act that was not permitted by the FCRA. *Phillips v. Grendahl*, 312

F.3d 357, 370 (8th Cir. 2002). The analysis now turns to the evidence presented at trial and viewed in a light most favorable to Bach.

In October of 1999, Bach discovered someone had opened up accounts with First Union and American Express in her name without her permission.(Tr. 321-22, 444, 446, JX 3, JX 4, JX 8) Evidence was presented from which a jury could conclude that Heidi Bake, Bach's granddaughter opened these accounts without Bach's approval and that this information was available to First Union. (Tr. 108-09, 115, 123-129, 223, 249, 253-54, 303; JX 3, JX 4, JX 8.) In fact, First Union believed that Heidi Bake, not Bach, opened the accounts. (Tr.121, 256-58.) Further, evidence was presented that First Union issued a replacement credit card to Heidi Bake's address while the original card was being held by police. (Tr. 137-38, 219.)

First Union agreed that Bach was never their customer. (Tr. 112, 121.) First Union also agreed that Bach had no legal obligation to sign a fraud affidavit regarding the accounts. (Id.)

After discovering accounts had been opened in her name without her permission, Bach sent letters to First Union and American Express informing them that someone had used her name without her permission to open these credit cards and make payments with them. (Tr. 331-335, JX 3, PX 13.) First Union denied ever receiving this letter (Tr. 277), but, on October 29, 1999, just one week later, First Union's Fraud Prevention Department called Bach at her home in Ohio for the first time. (Tr. 242, 254, 335-36) First Union continued to call Bach for the next 26 months (Tr. 120, 242, 335-36) and continued to press Bach to pay money that she had been told she did not owe. (Tr. 242, 254, 335-36.)

On August 16, 2000, Bach formally filed a credit dispute with all three major credit bureaus regarding First Union's reporting of adverse information regarding the accounts.

(Tr.362-63, JX 8.) On or about September 5, 2000, the credit reporting agency notified First Union that Bach was disputing the information being reported. (Tr. 157; PX 9.)

First Union did not present evidence that it conducted an investigation. (Tr. 301.) Also, there is no computer record that First Union conducted an investigation as a result of receiving this notice. (Id.)

A First Union recovery specialist who works under Vice President Duran in the collections department received the dispute form which stated "Please verify identification. FRAUD." First Union crossed through where the credit reporting agency had written FRAUD and wrote "NOT FRAUD." (Tr. 158-59; PX 9.) First Union then raised the amount that it claimed was a bad debt and instructed the credit reporting agency to change her credit rating score from R5 to R9, the worst score a person can get. (JX 9; Tr. 154, 158-59.)

The other credit rating agency also received Bach's dispute letter. This credit rating agency was told by one First Union employee that Bach had an account with First Union and that she owed First Union $25,800. (JX 9; Tr. 285-86.) Another First Union employee verified that Bach has an account with First Union and had a bad debt in the amount of $27,300. (JX 9; Tr. 285-86.) First Union responded on September 22, 2000, that Bach's credit card account had been closed as uncollectible due to customer age and condition with a balance of $27,451.12. (PX 9.) At trial, Mr. Durand, First Union's Vice President and Loan Recovery Coordinator admitted that nothing that First Union reported to the credit bureaus about Mrs. Bach was true. (Tr. 266.)

On April 4, 2001, Bach filed this lawsuit. According to First Union Vice President Durand, First Union did not completely correct the reports until November or December of 2001. (Tr. 120.)

There is sufficient evidence from which a reasonable jury could conclude that First Union wilfully violated the FCRA when it knew that the accounts were fraudulently opened in Bach's name and continued, even after Bach questioned her credit rating, to report Bach as a credit risk. Further, there is evidence from which a reasonable jury could conclude that First Union, because it knew that the accounts were fraudulently opened, failed to conduct a reasonable investigation when Bach reported the problem to the credit reporting agencies. Finally, there is sufficient evidence from which a reasonable jury could conclude that First Union continued to seek payment from Bach after knowing of the alleged fraud and after Bach questioned her credit rating.

Therefore, if First Union's Rule 50 motion regarding wilful violation of the FCRA was allowed to survive the trial, it is not well founded and would be OVERRULED. Sufficient evidence was presented, when viewed in a light most favorable to Bach, from which a reasonable jury could conclude that First Union wilfully violated the FCRA. Further, since First Union's motion for judgment as a matter of law would be OVERRULED, First Union would not be entitled to a new trial. The analysis next turns to First Union's motion regarding evidence of injury.

### C. Sufficient Evidence Regarding Injury

First Union argues that Bach failed to present evidence sufficient to support a finding that she suffered an injury as a result of the FCRA violation. The FCRA places a duty upon credit

reporting agencies to investigate consumer disputes after receipt of a notice of a dispute from a credit reporting agency. 15 U.S.C. § 1681s-2(b) Bach is, therefore, entitled to recover those damages that were proximately caused by First Union's failure to conduct a reasonable investigation after receiving the notice of dispute in September of 2000. Further, proximate cause means there must be a connection between First Union's violation of the FCRA and the damages complained of by Bach. (Tr. 505.)

The damages that Bach is entitled to recover include the injuries experienced, mental and emotional pain and suffering, humiliation, credit opportunities lost and damage to reputation for creditworthiness. (Tr. 508.) Further, when an injured party provides the only evidence of emotional distress, she must reasonably and sufficiently explain the circumstances of the injury and not rely on mere conclusory statements. *Alston v. King*, 231 F.3d 383, 388 (7th Cir. 2000). Finally, the damages sustained must have occurred after the date of any violations. (Tr. 508.)

In January of 2000, Bach, an aging widower, had a stroke. (Tr. 339.) After the stroke she became completely dependent on other people. (Tr. 341.) Bach could not drive, had difficulty with such basic tasks as writing, getting dressed, brushing her teeth, cleaning house and cooking. (Tr. 339-42.) Although the stroke was not shown to be the result of any of First Union's actions, its effects demonstrate Bach's vulnerability to the emotional distress later caused by First Union's violation of the FCRA.

After returning home from her stroke, Bach looked into purchasing a condo near hers so a relative could live next to her and give her assistance. (Tr. 352-53.) In the summer of 2000, Bach applied for a mortgage loan to use to purchase the condo. (Tr. 355-61.) On August 8, 2000, Bach was denied the loan due to her credit reports. (Tr. 188, 355, 361, JX 6.) It was after this

denial that Bach sent her letter of objection to the credit bureaus and the FCRA violation occurred. (Tr. 362-63; JX 8.)

After denial of this loan, Bach was desperate. (Tr. 364-66.) She had no assistance. (Id.) She testified that she was upset, ashamed and embarrassed. (Id.) She said denial of the loan made her "damn mad" and made life harder to the extent she could not cope with it. (Id.)

After she wrote her letter of objection and First Union elected to not correct her credit report, Bach made an additional attempt to obtain a mortgage loan for the nearby condo. (Tr. 363-64.) In March of 2001, she was denied the same type of mortgage loan that she applied for earlier. (Id.) This loan application was not successful because of her credit rating. (Tr. 174; PX 10.) She then had to abandon the idea of being able to have a family member live close to her to provide assistance. (Tr. 364.)

In November of 2001, Bach was again denied credit. (Tr. 369; PX 12.) This time Bank One denied her a master card. (Id.) Mr. Durand testified that First Union did not completely correct the adverse credit reports until November or December of 2001. (Tr. 120.)

Bach presented sufficient evidence from which a reasonable jury could conclude that First Union wrongfully damaged her credit rating. Further, Bach presented evidence from which a reasonable jury could conclude that the failure to correct the damage after Bach's appeal resulted in emotional pain and suffering, humiliation, lost credit opportunities and damage to her reputation for creditworthiness.

Therefore, if First Union's Rule 50 Motion regarding sufficient evidence to support a finding that she suffered an injury as a result of the FCRA violation was allowed to survive the trial, it is not well founded and would be OVERRULED. Sufficient evidence was presented from

which a reasonable jury could conclude that Bach suffered damages as a result of First Union's violation of the FCRA. Further, since First Union's motion for judgment as a matter of law would be OVERRULED, First Union would not be entitled to a new trial. The analysis next turns to First Union's Motion for a new trial or amendment of judgment.

## RULE 59(a) MOTION FOR A NEW TRIAL OR AMENDMENT OF JUDGMENT

Rule 59(a) provides that a new trial may be granted in an action where there has been a jury trial for any of the reasons for which new trials have "heretofore" been granted. Fed.R.Civ.P. 59(a). This means that "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or passion." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996), *cert. denied*, 519 U.S. 935 (1996). "Yet, a jury's verdict on the facts should only be overturned in the most compelling circumstances." *Rosa v. Telemundo CATV, Inc*. 907 F.Supp. 39, 41 (D.P.R. 1995)(quoting *Wells Real Estate, Inc. v. Greater Lowell Board of Realtors*, 850 F.2d 803, 811 (1st Cir. 1988)). Said another way, a verdict should not be set aside unless it was flagrantly outrageous and extravant. *Mooney v. Henderson Portion Pack Co.*, 339 F.2d 64, 65 (6th Cir. 1964.)

In this case, the Court has determined hereinbefore that the verdicts complained of are not against the weight of the evidence. What remains to address is First Union's argument that the damages awarded are excessive and the jury trial was influenced by prejudice and passion.

A damage award may not be overturned unless a mistake resulting in plain injustice has been committed, unless the award is contrary to all reason or unless it is so disproportionately large as to shock the conscience. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d 1461, 1470 (6th Cir. 1992). In addition, when considering whether an award is excessive, other awards and the nature and extent of the damages are considered. *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1207 (6th Cir. 1988). Yet, if there is any credible evidence to support an award, it should not be set aside. A trial court may not substitute its judgment or credibility determinations for those of the jury. *Farber v. Massillon Board of Education*, 917 F.2d 1391,1395 (6th Cir. 1990), *cert. denied*, 498 U.S. 1082 (1991) and 501 U.S. 1230 (1991).

If a court determines that an award of damages is excessive, it may condition denial of a motion for a new trial upon the plaintiff's acceptance of a remittitur of the jury verdict. *Jackson v. City of Cookeville*, 31 F.3d 1354, 1358 n.4 (6th Cir. 1994). Yet, a court may not order a remittitur when the amount of the verdict turns upon conflicting evidence and the credibility of witnesses. *Farber,* 917 F.2d at 1395. The analysis now turns to First Union's argument that the actual compensatory damages awarded were excessive.

<u>Compensatory Damages</u>

First Union argues that the only credit denial took place five months after the First Union tradeline had been deleted and, therefore, no economic damage was established. However, there was evidence before the Jury that at least one loan was denied (Tr. 363-64) and one credit card application was refused before Bach's record was cleared (Tr. 369; PX 12). Therefore, this argument fails.

First Union next argues that Bach must produce more than her own conclusory allegations to establish a claim for emotional distress damages. This is an accurate reading of the law and she has done so.

When an injured party provides the only evidence of emotional distress, she must reasonably and sufficiently explain the circumstances of the injury and not rely on mere conclusory statements. *Alston*, 231 F.3d at 388. Bach provided evidence of emotional distress and she explained the circumstance which caused the emotional distress. (Tr. 339-42, 355-61, 363-66, 369.)

First Union next argues that Bach failed to introduce evidence sufficient to support an award of $400,000 in compensatory damages. Yet, regarding just one of these damages, Courts have found that converting feelings such as pain, suffering and mental anguish into dollars is not an exact science. *Bickel v. Korean Air Lines Co. Ltd.*, 96 F.3d 151, 156 (6th Cir. 1996), *cert. denied*, 519 U.S. 1093 (1997); *Rosa*, 907 F.Supp. at 42-43. The jury may place the damage award "at the highest or lowest points for which there is a sound evidentiary predicate or anywhere in between …" *Rosa*, 907 F.Supp. at 43.

As determined hereinbefore, Bach presented from which a reasonable jury could conclude that she suffered emotional pain and suffering, humiliation, lost credit opportunities and damage to her reputation for creditworthiness. When all of the damages for which evidence was presented are considered, an award of $400,000 is not excessive and does not shock the conscience.

First Union next argues that the $400,000 award in this case is "far out of line" with the awards in other cases. First Union cites one case where an award of $5,000 against a credit

reporting agency was upheld when the consumer suffered economic damage and emotional distress as a result of misrepresentations. *Rasor v. Retail Credit Co.* 554 P.2d 1041, 1044-45 (Wash. 1976.) First Union cites another case where $12,750 in compensatory damages were awarded to a consumer who had wrongfully been accused on a credit report of having excessive drinking habits and immoral character. *Collins v. Retail Credit Co.*, 410 F.Supp. 924, 927, 932 (E.D.Mich. 1976.) In a third case cited by First Union, the plaintiff received $2,500 after being subjected to a credit report that was "rife with innuendo, misstatement and slander." *Millstone v. O'Hanlon Reports, Inc.,* 528 F.2d 829, 831, 834 (8th Cir. 1976.) Next, First Union cites two cases where consumers who were denied credit due to erroneous reports received $10,000 in compensatory damages. *Morris Credit Bureau of Cincinnati, Inc.*, 563 F.Supp. 962, 963-66 (S.D.Ohio 1983); *Thompson v. San Antonio Retail Merchants Assoc.*, 682 F.2d 509, 514 (5th Cir. 1982). Finally, First Union cites a case where a plaintiff received $100,000 when an agency continually misreported insurance claim information, *Boris v. Choicepoint Services, Inc.*, 249 F.Supp. 2d 851 (W.D.Ky. 2003) and another case where a plaintiff received $50,000 when a user obtained a consumer report for an unauthorized purpose. *Anderson v. Conwood Co.*, 34 F.Supp.2d 650, 654-56 (W.D.Tenn. 1999), *appeal dismissed*, 249 F.3d 549 (6th Cir. 2001).

In one final argument, First Union says that cases involving emotional distress without accompanying economic injury tend to produce even lower awards. However, this argument is not well founded because this case involves evidence of both emotional distress and economic injury.

Bach argues that First Union's cases are outdated and cites several cases with six digit damage awards for emotional distress. Among the cases cited are *Bogle v. McClure* where an

emotional distress award of $500,000 to each of seven victims of discrimination was upheld. 332 F.3d 1347, 1350, 1359 (11th Cir. 2003), *cert. dismissed*, 124 S.Ct. 1168 (2004). In *Gagliardo v. Connaught Laboratories*, a worker was awarded $1,550,000 in emotion distress damages for being terminated for poor job performance after the employer refused to make an accommodation for her disability. 311 F.3d 565, 573-74 (3rd Cir. 2002). In *Evans v. Port Authority of New York and New Jersey*, an employee was awarded $375,000 for a failure-to-promote claim. 273 F.3d 346, 355-56 (3rd Cir. 2001).

Regarding damages other than emotional distress, Bach cites *Kluss v. Alcan Aluminum Corp.* wherein a jury verdict of $400,000 was upheld for non economic damages resulting from false statements made about a terminated employee. 666 N.E.2d 603 (Ohio Ct. App. 1995). In another case cited by Bach, an employee was awarded $122,000 when an employer made false statements. *Kanjuka v. Metrohealth Medical Center*, 783 N.E.2d 920 (Ohio Ct. App. 2002), *appeal not allowed*, 786 N.E.2d 901 (Ohio 2003).

Bach criticizes the cases cited by First Union as being out-of-date and First Union criticizes the cases cited by Bach as being discrimination cases and not cases involving FCRA violations. However, not all of the cases cited by First Union are out-of-date and the cases cited by Bach do relate to the type of damages involved in this case. Further, none of the cases cited by either Party involve the same combination of damages for which Bach has presented evidence here.

Alas, neither Party has "won" the "battle of the comparative awards" outright. However, the cases cited do show that, while the award in this case may be more than the award in other cases involving FCRA violations and only one or two types of damages, the award in this case is

not out of line with other cases involving, as this one does, damages due to emotional distress. And, this case also includes damages due to humiliation, damages due to lost credit opportunities and damage to creditworthiness.

Therefore, the jury award of $400,000 in this case is not contrary to all reason or so disproportionately large as to shock the conscience. As a result, First Unions motion for a new trial or remittitur with regard to the Jury's award of compensatory damages is OVERRULED. First Union's motion regarding punitive damages will next be addressed.

<u>Punitive Damages</u>

Punitive damages are intended to serve as a deterrence and as retribution for wrongful conduct. *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 416 (2003). However, the Due Process Clause of the Fourteenth Amendment prohibits a grossly excessive punitive damages award against a tortfeasor. *Id.*

Courts, such as this one, reviewing punitive damage awards are to consider three guideposts to insure that punitive damages "are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 587 (1996) (quoting *Pacific Mutual Insurance Co. v. Hayslip*, 499 U.S. 1, 40-42 (1991)). The three guideposts are: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages awarded; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm*, 538 U.S. at 418. Each of the three guideposts will be addressed in turn.

A. Degree of Reprehensibility

"The most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm*, 538 U.S. at 419 (quoting Gore, 517 U.S. at 575). The reprehensibility is determined by considering whether: the harm caused was physical as opposed to economic; the tortious conduct was evidenced by an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery or deceit or a mere accident. *State Farm*, 538 U.S. at 419.

Here, First Union argues that "First Union's conduct barely registers on the reprehensibility spectrum" citing the Court's holding that "no reasonable jury could find that the precondition that the defendant acted with malice or wilful intent and that there was a conscious disregard for the rights and safety of others or that the defendant's conduct was characterized by hatred, ill will or spirit of revenge (Tr. 440). However, the Court's holding at Tr. 440 was in reference to Bach's defamation, invasion of privacy and negligence claims which were ultimately dismissed.

Sufficient evidence was presented from which the Jury could reasonably conclude that Bach suffered economic as well as physical damages, that she was financially vulnerable due to her age and health, that First Union repeatedly contacted her regarding payment even after her objections were a matter of record and that First Union wilfully violated the FCRA. In sum, the Jury could reasonably have concluded that First Union's conduct was reprehensible.

B. Disparity Between Actual and Punitive Damages

This guidepost is generally measured by the ratio of the punitive damages to the compensatory damages. *Id.* at 424-25. The Supreme Court has been reluctant to identify concrete constitutional limits on the ratio. *Id.* at 425. However, the Supreme Court has held that few awards exceeding a single-digit ratio will satisfy due process. *Id.*

The Jury awarded $2,628,600 in punitive damages and $400,000 in compensatory damages resulting in a ratio of 6.6. However, First Union argues that, since the compensatory damages should be reduced to approximately $5,000, the ratio far exceeds the single digit limit established for most cases. Since First Union's motion to reduce the compensatory damages has been overruled hereinbefore, this argument is not well founded.

First Union next argues that, if the compensatory damages are not reduced, the 6.6 ratio would be suggestive of an excessive punishment. The basis for this argument is the Supreme Court's statement that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process argument." *State Farm*, 538 U.S. at 425. However, The Supreme Court goes on to say, "The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." *Id.*

Here, there is no evidence that the compensatory damages awarded are substantial. Further, there is no evidence that the award of compensatory damages was not based upon the facts and circumstances of First Union's conduct and the harm to Bach. As determined hereinbefore, there is sufficient evidence from which a reasonable jury could conclude that First Union wilfully violated the FCRA and that Bach suffered $400,000 of compensatory damages as a result.

Finally, First Union argues that punitive damages should be awarded, if at all, only "if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm*, 538 U.S. at 419. However, this quote is found under the Court's discussion of the reprehensibility guidepost and not under the disparity guidepost. And, the reprehensibility guidepost has been addressed hereinbefore.

Neither Party has presented nor has this Court found any case disapproving of a single-digit ratio. The 6.6 ratio in this case passes constitutional muster.

C. Disparity Between Punitive Damages and Authorized Or Imposed Civil Penalties

This guidepost compares the punitive damages awarded to the civil or criminal penalties that could be imposed for comparable misconduct. *Gore*, 517 U.S. at 583. However, the remote possibility of a criminal sanction does not automatically sustain a punitive damages award. *State Farm*, 538 U.S. at 428. Also, substantial deference should be given to legislative judgments concerning appropriate sanctions for the conduct. *Gore*, 517 U.S. at 583.

Here, First Union notes that the maximum civil penalty that the Federal Trade Commission (the "FTC") can seek for knowing violations of the FCRA is $2,500 per violation. 15 U.S.C. §1681s(a)(2)(A). However, the FCRA provides for civil liability for FCRA violations equal to the sum of actual damages and such amount of punitive damages as the court may allow. 15 U.S.C. §1681n. Therefore, there is no statutory limit upon the punitive damages that may be awarded.

First Union then proceeds to civil cases where punitive damages have been awarded that are considerably less than those awarded by the Jury here. In one case, a punitive award of

-20-

$10,000 was upheld where there was considerable evidence that a credit union had consciously ignored the rights of a consumer. *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967, 969 (4th Cir. 1987). Other cases cited by First Union involving credit reports obtained for an improper purpose upheld punitive awards of $5,000. *Bakker v. McKinnon*, 152 F.3d 1007, 1009 (8th Cir. 1998); *Pappas v. City of Calumet City*, 9 F.Supp.2d 943, 951 (N.D.Ill. 1998).

Where a credit report falsely represented that the consumer had low moral character and excessive drinking habits, the punitive damage award was remitted from $300,000 to $50,000. *Collins v. Retail Credit Co.*, 410 F.Supp. 924, 933-34 (E.D.Mich. 1976). In another case, the court upheld a punitive award of $25,000 against an agency reporting that the consumer was a suspected drug dealer and a "hippie type." *Millstone v. O'Hanlon Reports*, 528 F.2d 829, 831 (8th Cir. 1976). Finally, in *Boris v. Choicepoint Services*, a punitive award of $250,000 was upheld where the credit reporting agency repeatedly misrepresented insurance claim information notwithstanding numerous efforts by the consumer to correct the misinformation. 249 F.Supp.2d 851, 854 (W.D.Ky. 2003).

Bach responds by first arguing that First Union's conduct qualifies as a felony under Ohio law. Ohio law forbids an individual, with purpose to obtain anything of value, from impairing any person's credit. Ohio Rev. Code Ann. §2905.11. This conduct is punishable for up to five years in prison. Ohio Rev. Code Ann. §2929.14.

Bach further responds that none of the cases cited by First Union involve punitive damages against a furnisher of information to a credit reporting agency, a violation of 15 U.S.C. 1681s-2. Finally Bach argues that the FCRA does not provide a level of sanctions appropriate to

violators "engaged in a nationwide pattern of extortion" which uses false credit reports to extract money from victims of identity fraud who it knows were never its customers.

### D. Analysis of Guideposts

There is sufficient evidence in this case from which a reasonable jury could conclude that First Union's conduct was very reprehensible. In addition, the ratio of punitive to compensatory damages is well within the constitutional limits set by the Supreme Court.

The disparity guidepost is a somewhat closer call. While the punitive award here is higher than penalties available to the FTC and higher than the penalties identified in the cases cited by First Union, similar conduct could arguably result in a criminal penalty in Ohio and the FCRA places no limit on punitive damages in civil actions. The guideposts direct this Court to a finding that the punitive damages awarded by the Jury in this case do not violate the U.S. Constitution. In addition, they are reasonable in their amount and rational in light of their purpose. The punitive damages award here is, therefore, upheld and First Union's Motion for a new trial or remittitur regarding punitive damages is OVERRULED. The analysis turns finally to First Union's argument that the Jury verdict in this case should be overturned because it is the result of improper passion and prejudice.

### Improper Passion and Prejudice

The right to a fair trial "comprehends a fair determination free from passion or prejudice, of the issues involved." *United States v. Haupt*, 136 F.2d 661, 671 (7th Cir. 1943.) Said another way, "There can be no justice in a trial by jurors inflamed by passion [or] warped by prejudice …" *Groppi v. Wisconsin*, 400 U.S. 505, 511 n.12 (1971). Further, when an excessive award becomes so large that it can no longer be considered merely excessive, improper passion and

prejudice is indicated. *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, (5th Cir. 1988) (citing *Wells v. Dallas Independent School District*, 793 F.2d 679, 683-84 (5th Cir. 1986)), *cert. denied*, 488 U.S. 848 (1988).

Here, First Union argues that the Jury was inflamed by evidence relating to events that occurred prior to the FCRA violation. First Union also argues that the excessive compensatory and punitive damages awarded here are an indication of the Jury's passion and prejudice.

However, as determined hereinbefore, evidence of events prior to the FCRA violation is relevant to wilfulness. Also, there was sufficient evidence from which a reasonable jury could conclude that First Union wilfully violated the FCRA and Bach sustained compensatory damages in the amount of and punitive damages in the amount of as a result of that violation. Therefore, while the Jury was aware of events and actions that took place prior to the FCRA violation, there was sufficient evidence from which, absent improper passion and prejudice, it could reasonably have reached its decisions based upon events and actions subsequent to the FCRA violation. Further, there is no evidence that the Jury was subjected to inappropriate and highly prejudicial influences.

### SUMMARY

First Union has waived its right to seek a Rule 50(b) post-verdict judgment as a matter of law. Had First Union not waived this right, its motion would be overruled on the basis that Bach presented sufficient evidence from which a reasonable jury could conclude that First Union wilfully violated the FCRA and she was damaged therefrom. First Union's Rule 50(b) motion would, therefore, have been overruled.

Regarding damages, the Jury award of compensatory damages is not contrary to all reason or so disproportionately large as to shock the conscience. Further, the Jury award of punitive damages is reasonable and rational and does not violate the U.S. Constitution. Finally, the Jury here was not influenced by improper passion and prejudice. First Union's Rule 59(a) Motion is, therefore, overruled. The Jury verdict in this matter stands.

**DONE** and **ORDERED** in Dayton, Ohio, this Sixth day of July, 2004.

s/ Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record